IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| YANT TESTING, SUPPLY & EQUIPMENT CO., a Nebraska Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID A. LAKNER, JR., an individual,<br><br>Defendant. | 8:20-CV-64<br><br>**TEMPORARY RESTRAINING ORDER** |

This matter came on for hearing on Plaintiff's Motion for Temporary Restraining Order, Filing 2, on the 14th day of February, 2020. Plaintiff appeared with counsel of record. Defendant was provided notice of the motion and hearing and appeared by counsel. Following the hearing, the parties were afforded the opportunity for additional briefing and to provide the Court with any additional evidence. Having reviewed the pleadings, written arguments, and evidence in the record, the Court concludes Plaintiff's Motion for Temporary Restraining Order is granted in part and the Motion for Preliminary Injunction is set for further hearing.

## I.  BACKGROUND

Plaintiff, Yant Testing, Supply & Equipment Company ("Yant") is a "petroleum products company that sells, services, and installs equipment for the petroleum industry." Filing 1 at 2. Yant has fourteen employees and services customers in several different states. Filing 1 at 2. Yant has two office locations in Nebraska, one in Lincoln housing two employees and one in Omaha with twelve employees. Filing 1 at 2. Defendant, David A. Lakner, Jr., worked for Yant for twelve years. Filing 1 at 2. Lakner started at Yant's Omaha office and was promoted to manage the Lincoln office in 2011. Filing 1 at 2. "Lakner was responsible for overseeing all of the functions

1

of the Lincoln Office, including recruiting and retaining employees; overseeing employees; serving, retaining, soliciting customers for Yant, and developing and maintaining relationships with Yant customers." Filing 1 at 2. As part of his duties, Lakner had access to Yant's "customer contact information and preferences; equipment costs, bid information, and pricing information; budgeting data[;] and other financial information," all of which Yant considered confidential information and/or trade secrets. Filing 1 at 2-3.

Starting in January 2020, Lakner prepared to leave Yant to work for Midwest Petroleum Equipment ("MPE"). Filing 1 at 3-4. MPE is a petroleum equipment company and a business competitor of Yant. Filing 1 at 4. On at least one occasion while still employed by Yant, Lakner wrote on his Yant timecard that he was at a Yant customer's office; however, GPS records for Lakner's truck show that he was actually at MPE during that time period. Filing 1 at 4; Filing 19-1 at 13-15. Additionally, while still employed by Yant, Lakner solicited William Bushhousen to quit his job at Yant and work for MPE. Filing 1 at 4-5; Filing 1-1 at 1-4; Filing 1-2 at 1-2. Bushhousen had been a technician for Yant for thirty-three years and was a highly valued employee. Filing 1 at 4. Bushhousen left the same day as Lakner to work for MPE. Filing 1 at 4-5.

At 5:00 p.m. on Friday, February 7, 2020, Lakner emailed Jared Baker, Yant's president, to resign his position, effective immediately. Filing 19-1 at 8. Yant claims that before he resigned, Lakner removed all the physical documents and files that were in his office. Filing 19-1 at 2. Yant's president, Jared Baker, averred that the files and documents Lakner took contained information that Yant considered confidential, including unfulfilled customer purchase orders, customer lists, and information about Yant customers that had taken time and effort to identify and compile. Filing 1 at 3. Yant contends Lakner also took an external hard drive connected to his computer that

contained a backup of the files on his company-owned computer. Filing 1 at 3. Lakner denied taking any physical or electronic files or information from Yant. Filing 15 at 3. However, Yant adduced video surveillance footage and GPS logs from Lakner's company truck showing that on the day before he resigned, Lakner took a large box from Yant's Lincoln office, as well as paper files or books on the day of his resignation. Filing 19-1 at 2-3.

At the hearing on this matter, Lakner's counsel stated that the box contained a part belonging to a customer of Yant and that Lakner was likely delivering that part to the customer before he quit. However, the GPS logs show Lakner did not deliver the box to any customer before his resignation. Filing 19-1 at 11-12. Furthermore, Baker testified that it was not Lakner's job to deliver parts to customers and that normally, a full appointment for delivery *and* installation of parts would be made with Yant customers, rather than an after-hours delivery as Lakner's counsel contended. Filing 19-1 at 4.

In response, Lakner stated he delivered the part to Yant's client the week after he resigned because "[d]ue to the disorganization of the Plaintiff's business and the skeleton office that they maintained at the time of our departure, I had serious concerns about whether the Plaintiff would timely deliver this to my customer." Filing 22 at 2.[1] Yant responds that not just the delivery, but the installation of the part in question was a substantial part of its business. Filing 23-1 at 2. Accordingly, Yant claims it lost business by Lakner's act of taking and installing the part after he resigned from Yant and while working for MPE. Filing 1-2 at 2-3.

Lakner left a cellphone and a desktop computer upon his resignation, both of which were owned by Yant. Filing 1 at 3. However, Lakner wiped these devices so that the files, emails,

---

[1] Defendant made this claim in his Supplemental Affidavit, filed at 1:31 PM on February 17, 2020. At the hearing, the Court ordered all evidence relating to the temporary restraining order to be filed no later than noon on February 17. Filing 17. Despite Defendant's failure to comply with the deadline specified in the Court's order, the Court will nevertheless consider Defendant's late-filed affidavit, Filing 22, as well as Plaintiff's response, Filing 23-1.

messages, or other materials were deleted and no longer accessible to Yant. Filing 1 at 3. Lakner did not have authority to delete or make the information on the devices inaccessible to Yant. Filing 1 at 3. Although the information on the devices was backed up through a cloud account, Yant cannot access the information because the backup account was registered under Lakner's personal email address. Filing 1 at 4. Lakner claims the iPhone contained "primarily personal photographs, contacts, and videos of my children and family" and not confidential business information. Filing 15 at 2.

Bushhousen resigned his employment with Yant on the same day as Lakner. Filing 1 at 4. Bushhousen also returned a Yant-owned cellphone, tablet, and laptop. Filing 1 at 4. However, unlike Lakner's devices, no files, communications, or other data had been deleted from these devices. Bushhousen's Yant-owned cellphone showed text message exchanges between Bushhousen and Lakner suggesting that Lakner was recruiting Bushhousen to leave Yant. Filing 1 at 4; Filing 1-1; Filing 1-2. Specifically, on Monday, January 27, 2020, Lakner texted Bushhousen details "recapping" the salary and benefits being offered to Bushhousen. Filing 1-1. In the text messages, Lakner told Bushhousen, "I have so much respect and admiration for you that I am not going to take no for an answer. You deserve better, we deserve better! Let me know what I have to do to make this this happen!" Filing 1-1 at 4. Lakner also told Bushhousen that he would be able to maintain his technician duties "[w]hen we bring all of our customers with us" to MPE. Filing 1-1 at 4. Lakner and Bushhousen's departure left Yant with only two employees in its Lincoln office. Filing 1 at 5.

Yant also presented evidence that Lakner has been contacting Yant customers to solicit them and spread misinformation about Yant. Filing 1 at 6. Specifically, Yant alleges that Lakner has been sending emails to Yant customers, using a customer list and contact information he

obtained only through his employment with Yant, to inform them that he and Bushhousen have "successfully transitioned to Midwest Petroleum Equipment (MPE)" and that they are "excited to carry over our partnership with you." Filing 1 at 6; Filing 1-3 at 1-2. In addition, on February 10, 2020, Baker received a call from a regular customer of Yant informing him that Lakner had contacted the customer and told him that Yant is no longer in the petroleum business. Filing 1 at 6.

Lakner claims that he contacted these potential customers based on information from "business cards, memory, and MPE directory contacts." Filing 22 at 2. He also argues that the majority of the contact information was publicly available because it appears in the Membership Directory for the Nebraska Petroleum Marketers and Convenience Store Assoiation (NPMCSA). Filing 18 at 2. In contrast to Lakner's claim that the customer contact information he took from Yant was widely and publicly available, Yant adduced evidence showing that its client email contacts were part of a confidential list which Yant had to compile. Importantly, Yant has shown that email addresses are not listed in the NPMCSA directory, nor are the particular email contacts Lakner used publicly available on Yant's customers' websites. Filing 19-2 at 36-103. Accordingly, Lakner's email contact with Yant's customers shortly after he departed MPE appears to be the result of his use of Yant's compiled client information, not publicly available information.

Evidence also suggests that, while still employed with Yant, Lakner attempted to direct Yant customers to MPE. Filing 1-3. Yant alleges that Lakner purposefully did not fulfill Yant purchase orders, took unfulfilled purchase orders when he left, and is now attempting to fulfill these orders through MPE. Filing 1 at 6. On January 30, 2020, Farm Boss Trailers, a Yant customer in Texas, placed an order for $10,000 worth of equipment from Yant. Filing 1 at 5-6. Lakner took that order but did not process it. Filing 1 at 5-6. When Lakner quit his job at Yant, he took with

him Farm Boss Trailers' unfulfilled Purchase Order for $10,000 worth of equipment. Filing at 1 at 5-6. On February 11, 2020, Lakner contacted Farm Boss Trailers and attempted to process the January 30, 2020, Purchase Order through MPE. Filing 19-2 at 2. Farm Boss Trailers declined Lakner's attempt to complete this order and instead filled the order through Yant. Filing 19-2 at 2.

Yant also presented evidence that Lakner was using his inside information about Yant's pricing scheme in order to undercut Yant. Filing 19-1 at 6-7. Baker testified that he worked with Lakner to provide a quote for the purchase of gas pumps to a customer in November 2019. Filing 19-1 at 6. After Lakner's resignation, the customer contacted Yant to tell it that Lakner had called and promised that MPE could "beat the quote Yant had given them on the gas pumps back in November." Filing 19-1 at 7.

Yant filed suit against Lakner on February 12, 2020, and filed a Motion for Temporary Restraining Order and Preliminary Injunction the same day. Filing 1; Filing 2. The Court scheduled a hearing on the Motion for Temporary Restraining Order for February 14, 2020. Prior to the hearing, Lakner filed an affidavit denying Yant's allegations and claiming he took no confidential information and that the client contact information he accessed was all "available from publicly accessible resources." Filing 51 at 3. Following the hearing, the Court permitted the parties to submit additional evidence and argument in writing. The Court has reviewed all of the parties' submissions and arguments.

## II. DISCUSSION

Yant seeks a temporary restraining order preventing Lakner from "directly or indirectly, soliciting, contacting, servicing, contracting with, or accepting business from any customers of Yant with whom Lakner did business and had personal contact while employed by Yant"; preventing Lakner from using or possessing any confidential information or trade secrets

6

belonging to Yant; requiring Lakner to return to Yant any and all physical or electronic information and documents; preventing Lakner from retaining copies of any information from Yant, and preventing Lakner from "accessing any database or email system licensed to, owned by, or maintained by, Yant." Filing 3 at 15-16.

In deciding a motion for a preliminary injunction, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). The same factors apply in determining whether to issue a temporary restraining order. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The burden of establishing the propriety of issuing a temporary restraining order is on the movant. *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). The Court will address each of the *Dataphase* factors in turn.

### A. Likelihood of Success on the Merits

The Court will first consider the likelihood Yant will succeed on the merits of its claims. "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). A movant need not prove it is more likely than not to prevail, but "need only show a reasonable probability of success, that is, a 'fair chance of prevailing'" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Here, Yant had adduced evidence demonstrating it is reasonably likely to prevail on the merits of its claims

7

for misappropriation of trade secrets, breach of fiduciary duty and the duty of loyalty, and tortious interference with a business relationship.

1. *Misappropriation of Trade Secrets*

Yant alleges that Lakner misappropriated Yant's trade secrets in violation of the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq., and the Nebraska Trade Secrets Act (NTSA), Neb. Rev. Stat. § 87-501 et seq. The DTSA criminalizes theft of trade secrets. 18 U.S.C. § 1832. Section 1836 of the DTSA permits private civil actions to enforce § 1832. Relevant to this action, § 1839 of the DTSA defines "trade secret" as financial or business or business information that the owner has taken reasonable measures to keep secret; and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." The definition of a trade secret under the NTSA is largely identical. *See* Neb. Rev. Stat. § 87-502(4).

Compilations such as the customer information in this case "are valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in [their] compilation gives a business a competitive advantage." *AvidAir Helicopter Supply, Inc. v. Rolls–Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). Similarly, the Nebraska Supreme Court has held that under certain circumstances, a customer list can be included in the definition of a trade secret. *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 709, 634 N.W.2d 774, 781 (2001). The Nebraska Supreme Court recognized that "[c]ourts are reluctant to protect customer lists to the extent that they embody information that is readily ascertainable through public sources." *Id.* at 709, 634 N.W.2d at 782 (citing *Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997)); *see also First Express Servs. Grp., Inc. v. Easter*, 286 Neb.

912, 924, 840 N.W.2d 465, 474 (2013) ([B]ecause the customers' identities and contact information were ascertainable from public sources, and because the other information on the list was also ascertainable by proper means, the customer list was not a trade secret.").

> But where time and effort have been expended to identify particular customers with particular needs or characteristics, courts will prohibit others from using this information to capture a share of the market. Such lists are distinguishable from mere identities and locations of customers that anyone could easily identify as possible customers.

*Johnson*, 262 Neb. at 709, 634 N.W.2d at 782 (internal citations omitted).

Yant has demonstrated it is reasonably likely to prevail on its claim for misappropriation of trade secrets. In contrast to Lakner's unsupported claim that he has contacted former Yant clients only via publicly available means, Yant has shown that Lakner likely utilized its compilation of customer emails, which are not available on either the NPMCSA directory or many of its customer's public websites. Filing 19-2. In addition to contacting Yant clients using Yant's email list, Lakner also appears to have used inside knowledge of Yant's pricing schemes and quotes in order to try to undercut Yant and take over unfulfilled purchase orders. Filing 19-1 at 6-7. All of this supports Yant's claim of misappropriation of trade secrets and demonstrates it is likely to prevail on the merits of this allegation.

   2. *Breach of Fiduciary Duty and the Duty of Loyalty*

Yant is also likely to succeed on its breach of fiduciary duties and duty of loyalty claim against Lakner. "Under Nebraska law, it is a generally recognized principle that an employee owes a duty of loyalty to his employer during the course of his employment . . . irrespective of the existence of a covenant not to compete or nonsolicitation clause." *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 786 (8th Cir. 2017).

In *West Plains*, the court granted a preliminary injunction where evidence showed that several defendants violated their duty of loyalty by using their former employer's confidential

information to immediately compete. *Id.* Specifically, the defendants had taken and used confidential information to compete and further may have solicited customers before resigning. The court reasoned that the defendants' attempts to cover their actions to take information supported the breach of duty of loyalty claims because several of the defendants sent copies of the plaintiff's confidential information to their personal email accounts or each other. Such evidence was sufficient to conclude that the defendants had engaged in activities to solicit customers while still employed by the plaintiff and used the plaintiff's confidential information to compete immediately against it.

Similarly, Lakner engaged in covert actions to take and utilize confidential information from Yant. By soliciting customers using inside information, Lakner was in a better position to immediately compete against Yant. Further, Lakner misrepresented his location and deleted files and data without authorization. Filing 19-1 at 13-15. Furthermore, Lakner's solicitation of Bushhousen for employment with MPE while both were still employed by Yant may also be a breach of the duty of loyalty. *See* Restatement (Second) of Agency § 393 (1958) ("An employee is subject to liability if, before or after leaving the employment, he causes fellow employees to break their contracts with the employer."). Based on these actions, Yant has demonstrated a likelihood of success on these claims.

3. *Tortious Interference with a Business Relationship*

Yant is also likely to succeed on its tortious interference claim against Lakner. To succeed on its tortious interference with a business relationship claim, Yant must show:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference cause the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

10

*Koster v. P & P Enterprises, Inc.*, 248 Neb. 759, 764, 539 N.W.2d 274, 278 (1995) (quoting *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 555, 529 N.W.2d 33, 39 (1995)).

The evidence at this stage shows that Lakner knew of Yant's customer relationships but acted to interfere with these relationships. In particular, Lakner surreptitiously took an unfulfilled purchase order from Farm Boss Trailers with him when he left Yant and attempted to process the purchase order through MPE instead. Filing 19-2 at 2. Lakner also used improperly obtained information to attempt to take business from Yant by undercutting its price quotes. Filing 19-1 at 6-7. Yant is therefore likely to succeed on this claim as well. This factor weighs strongly in favor of issuance of the requested temporary restraining order.

### B. Threat of Irreparable Harm

Under the next *Dataphase* factor, the movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 192 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). The Eighth Circuit has agreed that while monetary damages alone can compensate for harm already incurred, injunctive relief is appropriate to "protect . . . against the loss of any additional customers due to the illegalities of the defendants." *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991). "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citing *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987)).

Here, Yant has presented concrete evidence that it has suffered and is likely to continue to suffer harm in the absence of an injunction. Yant contends that the Lakner's use of its trade secrets to lure away its clients will result in a loss of business and customer goodwill. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (internal quotation marks omitted) ("Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars."). Yant has demonstrated that Lakner has contacted at least three of its customers since his resignation in an attempt to do business with them. The evidence shows Lakner has continued these attempts to poach Yant customers even after the commencement of this lawsuit. Thus, while Yant may seek economic damages, the amount of damages resulting from the loss of confidential customer information as well as the threat of ongoing harm makes damages difficult to ascertain with any degree of certainty. The Court concludes that in the absence of a temporary restraining order, Lakner is likely to continue his actions, resulting in further and ongoing loss of business to Yant. Accordingly, this factor weighs in favor in issuance of the requested temporary restraining order.

### C. Balance of Injury to the Parties

When issuing a preliminary injunction courts must assess whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

As discussed above, the threat of harm to Yant in the absence of a restraining order is significant. It has lost business and stands to lose significantly more if Lakner's actions continue.

Lakner argues, however, that the effect on him would be even harsher, claiming that a temporary restraining order would essentially "prohibit[ him] from working in the industry altogether" due to the relatively small number of available customers. Filing 18 at 11. The Court agrees with Lakner that to the extent Yant seeks to prevent him from "soliciting, contacting, servicing, contracting with, or accepting business from *any* customers of Yant with whom Lakner did business and had personal contact while employed by Yant," Filing 3 at 15 (emphasis added), such a restriction would be overly broad and unduly burdensome on Lakner. However, to the extent that Yant simply seeks to prevent Lakner from misappropriating trade secrets, breaching his fiduciary duties, and tortiously interfering with Yant's business relationships, such a restriction is more narrowly tailored to address the wrongs alleged in this case. Such a prohibition would not prevent Lakner from engaging in valid competition with Yant, but would only prevent him from using unfair means to do so. Accordingly, tailoring a temporary restraining order to fit the facts of this case, the balance of injury to the parties weighs in favor of issuance of the requested relief.

### D. Public Interest

Lastly, the Court concludes that the public interest favors issuance of a preliminary injunction.

Courts have held that the public interest favors a fair, competitive marketplace. *See e.g.*, *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996), *aff'd sub nom. Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305 (8th Cir. 1997). Lakner could potentially gain an unfair advantage with a competitor using the information and resources belonging to Yant. As discussed in more detail previously, Lakner's use of trade secrets and his breach of loyalty to Yant allowed him to immediately engage in unfair competition with Yant in a way that he would not have been able to do had he played by the rules.

Furthermore, as stated above, the Court concludes a temporary restraining order is warranted only to the extent it prohibits Lakner from engaging in unfair competition, not to prevent Lakner from doing business with all Yant customers. Accordingly, such a restriction is tailored to serve the public interest in a fair and competitive marketplace. This factor therefore weighs in favor of issuance of the temporary restraining order.

### III. CONCLUSION

The Court concludes Yant's Motion for Temporary Restraining Order, Filing 2, should be granted in part. To the extent that Lakner continues to deny possessing any physical or electronic files belonging to Yant, the Court finds it appropriate to enjoin him from using any confidential information obtained from Yant, but will reserve addressing the return of such materials, should they be found to be in Lakner's possession, at the hearing on the preliminary injunction.

IT IS ORDERED:

1. Plaintiff's Motion for Temporary Restraining Order (Filing 2) is granted in part as follows:

2. Defendant is enjoined from using in any manner any confidential information or trade secrets, including compilations of customer contact information not publicly available, which he obtained from Plaintiff;

3. Defendant is enjoined from accessing or utilizing any database or email system or any information contained therein that is licensed to, owned by, or maintained by Plaintiff;

4. Defendant is ordered not to allow the destruction, manipulation, or disposition of any information, electronic or physical, alleged to belong to Plaintiff and in Defendant's possession until such time as the Court either orders its return or

determines it is not in Defendant's possession. This includes the external hard drive Plaintiff claims Defendant removed from his office; any information stored on Defendant's personal cloud backup which relates in any way to Plaintiff's clients or business; and any physical or electronic lists, purchase orders, or other business documents of Plaintiff's;

5. Pursuant to Rule 65(c) and the provisions of this Order, the Court requires Plaintiff to post a bond with the Clerk of the Court in the amount of $500.00;

6. The hearing on Plaintiff's Motion for Preliminary Injunction will take place on March 2, 2020, at 9:30 A.M., before the undersigned judge in Courtroom No. 1, Fourth Floor, Roman L. Hruska United States Courthouse, 111 South 18th Plaza, Omaha, Nebraska 68102;

7. This Temporary Restraining Order will expire at 11:59 P.M. on March 3, 2020, unless otherwise extended or vacated. The Court directs the parties to review Fed. R. Civ. P. 65(b) which allows an extension of a temporary restraining order only by consent of the adverse party or for good cause.

DATED this 18th day of February, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge