IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

YANT TESTING, SUPPLY & EQUIPMENT
CO., a Nebraska Corporation,

Plaintiff,

vs.

DAVID A. LAKNER, JR., an individual,

Defendant.

8:20-CV-64

PRELIMINARY INJUNCTION

This matter came on for hearing on Plaintiff's Motion for Preliminary Injunction, Filing 2, on the 2nd day of March, 2020. Plaintiff appeared with counsel of record. Defendant was provided notice of the motion and hearing and appeared with counsel. Evidence and testimony were offered and received. Having heard testimony and reviewed the pleadings, exhibits, and arguments before it, the Court concludes Plaintiff's Motion for Preliminary Injunction is granted.

## I.    BACKGROUND

In drafting this statement of facts, the Court has considered Plaintiff's Verified Complaint, Filing 1, and the evidence submitted in support of the temporary restraining order. Filing 3; Filing 19; Filing 22. At the preliminary injunction hearing, the Court also received Exhibits 1 through 21 from Plaintiff; Exhibits 100 through 178 from Lakner; and the testimony of Jared Baker, president of Yant; Kevin Mohr, employee of Yant; Defendant, David Lakner; and Alex Dolson, Vice President of Midwest Petroleum Equipment.

Plaintiff, Yant Testing, Supply & Equipment Company ("Yant") is a "petroleum products company that sells, services, and installs equipment for the petroleum industry." Filing 1 at 2. Yant has fourteen employees and services customers in several different states. Filing 1 at 2. Yant has

1

two office locations in Nebraska, one in Lincoln housing two employees and one in Omaha with twelve employees. Filing 1 at 2. Defendant, David A. Lakner, Jr., worked for Yant for twelve years. Filing 1 at 2. Lakner started at Yant's Omaha office and was promoted to manage the Lincoln office in 2011. Filing 1 at 2. "Lakner was responsible for overseeing all of the functions of the Lincoln Office, including recruiting and retaining employees; overseeing employees; serving, retaining, soliciting customers for Yant, and developing and maintaining relationships with Yant customers." Filing 1 at 2. As part of his duties, Lakner had access to Yant's "customer contact information and preferences; equipment costs, bid information, and pricing information; budgeting data[;] and other financial information," all of which Yant considered confidential information and/or trade secrets. Filing 1 at 2-3.

Starting in January 2020, Lakner prepared to leave Yant to work for Midwest Petroleum Equipment ("MPE"). Filing 1 at 3-4. MPE is a petroleum equipment company and a business competitor of Yant. Filing 1 at 4. On at least one occasion while still employed by Yant, Lakner wrote on his Yant timecard that he was at a Yant customer's office; however, GPS records for Lakner's truck show that he was actually at MPE during that time period. Filing 1 at 4; Filing 19-1 at 13-15. Additionally, while still employed by Yant, Lakner solicited William Bushhousen to quit his job at Yant and work for MPE. Filing 1 at 4-5; Filing 1-1 at 1-4; Filing 1-2 at 1-2. Bushhousen had been a technician for Yant for thirty-three years and was a highly valued employee. Filing 1 at 4. Bushhousen left the same day as Lakner to work for MPE. Filing 1 at 4-5.

At 5:00 p.m. on Friday, February 7, 2020, Lakner emailed Jared Baker, Yant's president, to resign his position, effective immediately. Filing 19-1 at 8. Yant claims that before he resigned, Lakner removed all the physical documents and files that were in his office. Filing 19-1 at 2. Yant's

president, Jared Baker, averred that the files and documents Lakner took contained information that Yant considered confidential, including unfulfilled customer purchase orders, customer lists, and information about Yant customers that had taken time and effort to identify and compile. Filing 1 at 3. Yant contends Lakner also took an external hard drive connected to his computer that contained a backup of the files on his company-owned computer. Filing 1 at 3. Lakner denied taking any physical or electronic files or information from Yant. Filing 15 at 3. However, Yant adduced video surveillance footage and GPS logs from Lakner's company truck showing that on the day before he resigned, Lakner took a large box from Yant's Lincoln office, as well as paper files or books on the day of his resignation. Filing 19-1 at 2-3.

In response, Lakner stated the box contained a part which he delivered to a Yant client, Talmage, the week after he resigned because "[d]ue to the disorganization of the Plaintiff's business and the skeleton office that they maintained at the time of our departure, I had serious concerns about whether the Plaintiff would timely deliver this to my customer." Filing 22 at 2. Yant responds that not just the delivery, but the installation of the part in question was a part of its business. Filing 23-1 at 2. Accordingly, Yant claims it lost business by Lakner's act of taking and installing the part after he resigned from Yant and while working for MPE. Filing 1-2 at 2-3.

Lakner left a cellphone and a desktop computer upon his resignation, both of which were owned by Yant. Filing 1 at 3. However, Lakner either wiped these devices so that the files, emails, messages, or other materials were deleted or protected them with passwords which are unknown to Yant. Filing 1 at 3. Lakner did not have authority to delete or make the information on the devices inaccessible to Yant. Filing 1 at 3. Although the information on the devices was backed up through a cloud account, Yant cannot access the information because the backup account was registered under Lakner's personal email address. Filing 1 at 4. Lakner claims the iPhone contained

"primarily personal photographs, contacts, and videos of my children and family" and not confidential business information. Filing 15 at 2. At the preliminary injunction hearing, Lakner testified he asked his wife to delete the personal information on the phone and was unaware if she completely deleted everything on the phone because he never looked at it again before returning it to Yant. Lakner later testified he used his Yant cellphone on his last day of work, then changed his testimony and stated he only used it on his second-to-last day, not his last day, because of his previous statement that his wife had erased the phone for him.

Bushhousen resigned his employment with Yant on the same day as Lakner. Filing 1 at 4. Bushhousen also returned a Yant-owned cellphone, tablet, and laptop. Filing 1 at 4. However, unlike Lakner's devices, no files, communications, or other data had been deleted from these devices. Bushhousen's Yant-owned cellphone showed text messages between Bushhousen and Lakner suggesting that Lakner was recruiting Bushhousen to leave Yant. Filing 1 at 4; Filing 1-1; Filing 1-2. Specifically, on Monday, January 27, 2020, Lakner texted Bushhousen details "recapping" the salary and benefits being offered to Bushhousen. Filing 1-1. In the text messages, Lakner told Bushhousen, "I have so much respect and admiration for you that I am not going to take no for an answer. You deserve better, we deserve better! Let me know what I have to do to make this this happen!" Filing 1-1 at 4. Lakner also told Bushhousen that he would be able to maintain his technician duties "[w]hen we bring all of our customers with us" to MPE. Filing 1-1 at 4. Lakner and Bushhousen's departure left Yant with only two employees in its Lincoln office. Filing 1 at 5.

Yant also presented evidence that Lakner has been contacting Yant customers to solicit them and spread misinformation about Yant. Filing 1 at 6. Specifically, Yant alleges that Lakner has been sending emails to Yant customers, using a customer list and contact information he

obtained only through his employment with Yant, to inform them that he and Bushhousen have "successfully transitioned to Midwest Petroleum Equipment (MPE)" and that they are "excited to carry over our partnership with you." Filing 1 at 6; Filing 1-3 at 1-2. In addition, on February 10, 2020, Baker received a call from a regular customer of Yant informing him that Lakner had contacted the customer and told him that Yant is no longer in the petroleum business. Filing 1 at 6.

Lakner stated in an affidavit that he contacted these potential customers based on information from "business cards, memory, and MPE directory contacts." Filing 22 at 2. He also initially argued that the majority of the contact information was publicly available because it appears in the Membership Directory for the Nebraska Petroleum Marketers and Convenience Store Association (NPCA). Filing 18 at 2. However, Yant refuted that claim by showing that its client email contacts were part of a confidential list which Lakner compiled prior to leaving Yant. Importantly, Yant has shown that email addresses are not listed in the NPCA directory, nor are the majority of the particular email contacts Lakner used publicly available on Yant's customers' websites. Filing 19-2 at 36-103.

Lakner also compiled a list of handwritten client-contact information that he admitted taking with him upon leaving Yant, but which he apparently did not produce to Yant until after his deposition. Filing 33-20. All of the contacts on the email Lakner sent announcing his transition to MPE appear on his handwritten list. *Compare* Filing 33-20, *with* Filing 33-17. In response, Lakner adduced a list of nearly seventy websites, handbooks, and other miscellaneous documents which are apparently publicly available on the internet. Some of these website and documents do not reveal that they are an entity that would be in the petroleum business. Furthermore, most of the email contacts are generic email addresses, not the direct email address of specific contact people

who would be in the position to do business with a petroleum-products dealer. Few of these publicly available email addresses actually appear in Lakner's email to clients, thus suggesting they are not the true source of the contact information as he initially claimed. MPE's Vice President, Alex Dolson, testified that he recognized some of the email addresses on Lakner's handwritten list as being MPE clients. However, at the hearing on the preliminary injunction, in direct contradiction to his previous affidavit, Filing 22 at 2, Lakner admitted that he could not recall the vast majority of Yant client contact information from his memory alone and that he relied on information and lists he generated during his employment with Yant in order to solicit customers while employed at Yant. The evidence provided by Lakner at the preliminary injunction hearing included screenshots of numerous web pages of entities that Yant did business with prior to Lakner's departure. The web pages provided to the Court generally reveal generic contact email addresses designed for public inquiry, not direct email addresses of sales contacts at these entities. *See generally* Exhibits 101 through 173. Thus, Lakner's statement in his affidavit, Filing 22 at 2, that he contacted Yant customers based on "business cards, memory, and MPE directory contacts" is not credible; the evidence shows Lakner contacted Yant clients based upon the client information he admits taking from Yant.

Evidence also suggests that, while still employed with Yant, Lakner attempted to direct Yant customers to MPE. Filing 1-3. On January 30, 2020, Farm Boss Trailers, a Yant customer in Texas, placed an order for $10,000 worth of equipment from Yant. Filing 1 at 5-6. Lakner took that order but did not process it. Filing 1 at 5-6. When Lakner quit his job at Yant, he took with him Farm Boss Trailers' unfulfilled Purchase Order for $10,000 worth of equipment. Filing 1 at 5-6. On February 11, 2020, Lakner contacted Farm Boss Trailers and attempted to process the January 30, 2020, Purchase Order through MPE. Filing 19-2 at 2. Farm Boss Trailers declined

Lakner's attempt to complete this order and instead filled the order through Yant. Filing 19-2 at 2. Yant only discovered the unfulfilled purchase order when it was able to recover a limited number of deleted emails from Lakner's work email account. Filing 33-10. Lakner admitted at the preliminary injunction hearing that he did not inform anyone at Yant of the outstanding purchase order prior to his departure and that he called Farm Boss on his first day of employment with MPE. He admitted contacting Farm Boss using contact information he had written down while still employed by Yant.

Yant also presented evidence that Lakner was using his inside information about Yant's pricing scheme in order to undercut Yant. Filing 19-1 at 6-7. Baker, Yant's president, testified that he worked with Lakner to provide a quote for the purchase of gas pumps to a customer, Weston BP, in July 2019 and updated in November 2019. Filing 19-1 at 6. During a conversation shortly before Lakner's resignation, Weston BP asked Baker and Lakner to submit another updated quote so it could complete the purchase with Yant. Lakner never submitted a new quote to Weston BP. After Lakner's resignation, the customer contacted Yant to tell it that Lakner had called and promised that MPE could "beat the quote Yant had given them on the gas pumps back in November." Filing 19-1 at 7.

Yant also presented evidence that Lakner deleted entries from Yant's internal accounting software in order to obscure his attempts to take client work orders. With respect to a company called Talmage, Lakner created a work order in July 2019 for a petroleum part. Filing 23-1. Over the next few months, Lakner proceeded to change the status of the client's order such as to indicate it was not yet ready for further action, before he ultimately deleted the entry altogether, immediately prior to his departure from Yant. Yant was only able to recover the deleted entry from its accounting software.

With respect to a client called Parkview, Baker testified at the preliminary injunction hearing that Lakner prevented Yant from matching a competitor's bid by failing to respond to repeated client inquiries about the price and by failing to inform Yant of Parkview's desire for an updated quote before he quit. Filing 33-12. Yant found out about Lakner's actions after his departure and was ultimately unable to secure the bid from Parkview due to Yant's delayed ability to respond.

Yant also presented evidence that Lakner solicited business for a software upgrade for a Yant customer, Gretna Gas and Lube. Yant discovered Lakner had scheduled the upgrade only when the customer called to inquire about it. Lakner had scheduled the work for March 25, 2020, well beyond his departure date, yet he had never informed anyone at Yant of the appointment.

Finally, Yant demonstrated that Lakner had emailed himself pictures of Yant customer's businesses, including pumps and other equipment, and then deleted the email before surrendering his electronic devices to Yant. Filing 33-2.

Yant filed suit against Lakner on February 12, 2020, and filed a Motion for Temporary Restraining Order and Preliminary Injunction the same day. Filing 1; Filing 2. The Court scheduled a hearing on the Motion for Temporary Restraining Order for February 14, 2020.

Following the hearing, the Court granted Yant's Motion for Temporary Restraining Order in Part. Filing 27. The Court found that to the extent Yant sought to enjoin Lakner from having any contact with prior customers of Yant with whom he did business while employed by Yant, "such a restriction would be overly broad and unduly burdensome on Lakner." Filing 27 at 13. However, the Court determined a temporary restraining order was warranted "to the extent that Yant simply seeks to prevent Lakner from misappropriating trade secrets, breaching his fiduciary duties, and tortiously interfering with Yant's business relationships." Filing 27 at 13. The Court

issued a Temporary Restraining Order, set to expire March 3, 2020. Filing 27 at 14-15. The hearing on the preliminary injunction was held on March 2, 2020.

## II.    DISCUSSION

Yant asks the Court to continue in place the Temporary Restraining Order issued by this Court on February 18, 2020. Filing 27. The Temporary Restraining Order enjoined Lakner from using in any manner any confidential information or trade secrets, including compilations of customer contact information not publicly available, which he obtained from Plaintiff and from accessing or utilizing any database or email system or any information contained therein that is licensed to, owned by, or maintained by Plaintiff. Filing 27 at 14. The temporary restraining order also required Lakner not to allow the destruction, manipulation, or disposition of any information, electronic or physical, alleged to belong to Plaintiff. Filing 27 at 14-15. In addition to these restrictions, at the preliminary injunction hearing, Yant also asked the Court to impose a "brief noncompete period" which it requests last for thirty days.

As an initial matter, the Court notes that much of Lakner's testimony at the preliminary injunction hearing lacked credibility. At the preliminary injunction hearing and at his deposition, Lakner repeatedly contradicted his own affidavit testimony, such as by claiming he could recall all of his previous client's email addresses from memory and then being unable to do so when placed under oath. In other respects, Lakner's testimony was lacking in corroborative details or believable explanations for his actions. Thus, to the extent Lakner's testimony is contradicted by other testimony or evidence in the record, the Court gives less weight to Lakner's version of events.

In deciding a motion for a preliminary injunction, the court must consider "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will

succeed on the merits; and (4) the public interest." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "A preliminary injunction is an extraordinary remedy . . . ." *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). The burden of establishing the propriety of issuing a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). The Court will address each of the *Dataphase* factors in turn.

## A. Likelihood of Success on the Merits

The Court will first consider the likelihood Yant will succeed on the merits of its claims. "In deciding whether to grant a preliminary injunction, likelihood of success on the merits is most significant." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 776 (8th Cir. 2012) (internal quotation marks omitted) (quoting *Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 59 F.3d 80, 83 (8th Cir. 1995)). A movant need not prove it is more likely than not to prevail, but "need only show a reasonable probability of success, that is, a 'fair chance of prevailing'" on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008) (en banc)). Here, Yant had adduced evidence demonstrating it is reasonably likely to prevail on the merits of its claims for misappropriation of trade secrets, breach of fiduciary duty and the duty of loyalty, and tortious interference with a business relationship.

### 1. Misappropriation of Trade Secrets

Yant alleges that Lakner misappropriated Yant's trade secrets in violation of the Federal Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq., and the Nebraska Trade Secrets Act (NTSA), Neb. Rev. Stat. § 87-501 et seq. The DTSA criminalizes theft of trade secrets. 18 U.S.C. § 1832. Section 1836 of the DTSA permits private civil actions to enforce § 1832. Relevant to this

action, § 1839 of the DTSA defines "trade secret" as financial or business or business information that the owner has taken reasonable measures to keep secret; and "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." The definition of a trade secret under the NTSA is largely identical. *See* Neb. Rev. Stat. § 87-502(4).

Compilations such as the customer information in this case "are valuable, not because of the quantum of secret information, but because the expenditure of time, effort, and expense involved in [their] compilation gives a business a competitive advantage." *AvidAir Helicopter Supply, Inc. v. Rolls–Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). Similarly, the Nebraska Supreme Court has held that under certain circumstances, a customer list can be included in the definition of a trade secret. *Home Pride Foods, Inc. v. Johnson*, 262 Neb. 701, 709, 634 N.W.2d 774, 781 (2001). The Nebraska Supreme Court recognized that "[c]ourts are reluctant to protect customer lists to the extent that they embody information that is readily ascertainable through public sources." *Id.* at 709, 634 N.W.2d at 782 (citing *Morlife, Inc. v. Perry,* 56 Cal. App. 4th 1514, 66 Cal. Rptr. 2d 731 (1997)); *see also First Express Servs. Grp., Inc. v. Easter*, 286 Neb. 912, 924, 840 N.W.2d 465, 474 (2013) ("[B]ecause the customers' identities and contact information were ascertainable from public sources, and because the other information on the list was also ascertainable by proper means, the customer list was not a trade secret.").

> But where time and effort have been expended to identify particular customers with particular needs or characteristics, courts will prohibit others from using this information to capture a share of the market. Such lists are distinguishable from mere identities and locations of customers that anyone could easily identify as possible customers.

*Johnson*, 262 Neb. at 709, 634 N.W.2d at 782 (internal citations omitted).

Yant has demonstrated it is reasonably likely to prevail on its claim for misappropriation of trade secrets. Lakner adduced testimony that there was a limited customer base of petroleum sellers in the state of Nebraska and that these company's names are generally known and available. MPE's Vice President, Alex Dolson, testified that he recognized many of the email addresses on Lakner's handwritten list as being MPE customers. The Court agrees with Lakner that the mere existence of a list of client contact information alone may not be sufficient to support a finding that a customer list constituted a trade secret. *See Easter*, 286 Neb. at 927, 840 N.W.2d at 475. But Yant adduced testimony that Yant's compilation of client information contained not simply the client's names, but also their private, direct email addresses which were generated by Yant over years of conducting business and building client relationships. Filing 1 at 2-3. Furthermore, the evidence supports that the compilation included "customer contact information and preferences; equipment costs, bid information, and pricing information; budgeting data[;] and other financial information," Filing 1 at 2-3, constituting customer-related "particular needs or characteristics." *Johnson*, 262 Neb. at 709, 634 N.W.2d at 782. There is no doubt that the latter information was not publicly available or otherwise easily ascertainable by proper means. Rather, Lakner had access to this information only due to Yant's efforts to compile and protect it.

At the preliminary injunction hearing, Lakner's counsel pointed the Court to *First Express Services Group, Inc. v. Easter*, 286 Neb. at 927, 840 N.W.2d at 475, as most supportive of its contention that the list Lakner took did not constitute a trade secret. *Easter* involved a crop-insurance client list which the defendant claimed was "proprietary and valuable." *Id.* at 924, 840 N.W.2d at 474. In finding the list was not a trade secret, the Nebraska Supreme Court noted "that simple Internet searches could identify which farmers farmed what land and could provide contact information for those farmers. [The defendant] also demonstrated that she could recite most of her

customers' information from memory." *Id.* at 925, 840 N.W.2d at 475. In contrast, here Yant has demonstrated that while some of its client's phone numbers or generic email addresses may have been ascertainable from an internet search, the compilation of their direct sales email contacts and purchase histories were not publicly available. Furthermore, unlike the plaintiff in *Easter*, Lakner was unable, under oath, to back up his claim of remembering his client list from memory.

More on point is the *Johnson* case in which the Nebraska Supreme Court found a customer list did constitute a trade secret. 262 Neb. at 709, 634 N.W.2d at 782. The court noted that aside from mere names and addresses, the defendants had taken "information on customers who had previously placed orders with [Plaintiff], and the amounts of those orders." *Id.* The Court reasoned that this constituted a trade secret because "[w]ith such information, a competitor could undercut [Plaintiff]'s pricing." *Id.* Likewise, here Yant has shown Lakner took not just contact information which was ascertainable from proper means, but also compiled, direct email addresses and purchase-related client information which allowed him to immediately contact clients, undercut Yant's pricing, poach Yant's business, and otherwise unfairly compete with Yant. All of this supports Yant's claim of misappropriation of trade secrets and demonstrates it is likely to prevail on the merits of this allegation.

### 2. Breach of Fiduciary Duty and the Duty of Loyalty

Yant is also likely to succeed on its breach of fiduciary duties and duty of loyalty claim against Lakner. "Under Nebraska law, it is a generally recognized principle that an employee owes a duty of loyalty to his employer during the course of his employment . . . irrespective of the existence of a covenant not to compete or nonsolicitation clause." *W. Plains, L.L.C. v. Retzlaff Grain Co. Inc.*, 870 F.3d 774, 786 (8th Cir. 2017). "Such conduct might include soliciting customers of the employer or forming one's own competing business while still working for the

employer." *Id.* (citing *Buell, Winter, Mousel & Assocs., Inc. v. Olmsted & Perry Consulting Eng'rs, Inc.*, 227 Neb. 770, 420 N.W.2d 280, 283 (1988)). "[B]efore the end of his employment, [an employee] can properly purchase a rival business and upon termination of employment immediately compete." *Prof'l Bus. Servs. Co. v. Rosno*, 268 Neb. 99, 117, 680 N.W.2d 176, 189 (2004). "He is not, however, entitled to solicit customers for such rival business before the end of his employment nor can he properly do other similar acts in direct competition with the employer's business." *Id.* (quoting Restatement (Second) of Agency § 393 at 216 (1958)).

In *West Plains*, the court granted a preliminary injunction where evidence showed that several defendants violated their duty of loyalty by using their former employer's confidential information to immediately compete. *Id.* Specifically, the defendants had taken and used confidential information to compete and further may have solicited customers before resigning. The court reasoned that the defendants' attempts to cover their actions to take information supported the breach of duty of loyalty claims because several of the defendants sent copies of the plaintiff's confidential information to their personal email accounts or each other. Such evidence was sufficient to conclude that the defendants had engaged in activities to solicit customers while still employed by the plaintiff and used the plaintiff's confidential information to compete immediately against it.

Here, Lakner engaged in covert actions to take and utilize confidential information from Yant and solicit Yant customers both before and after he left his employment there. With respect to Talmage, Lakner created a work order, changed the status of the client's order such as to indicate it was not yet ready for further action, and ultimately deleted the entry altogether without every notifying Yant. Filing 23-1. Lakner also failed to respond to Parkview's repeated requests that Yant provide it with an updated quote, resulting in the loss of the customer to Yant. Filing 32-12.

Lakner scheduled a service appointment with Gretna Gas and Lube, but failed to tell either the customer or Yant that he apparently intended to perform the upgrade in March 2020, after his transition to MPE. Filing 33-12.

Lakner was in a better position to immediately compete with Yant because he utilized confidential information to undercut Yant's prices, divert Yant's business, and solicit Yant's customers. Lakner also misrepresented his location and deleted files and data without authorization. Filing 19-1 at 13-15. Based on these actions, Yant has demonstrated a likelihood of success on these claims.

*3. Tortious Interference with a Business Relationship*

Yant is also likely to succeed on its tortious interference claim against Lakner. To succeed on its tortious interference with a business relationship claim, Yant must show:

> (1) the existence of a valid business relationship or expectancy, (2) knowledge by the interferer of the relationship or expectancy, (3) an unjustified intentional act of interference on the part of the interferer, (4) proof that the interference cause the harm sustained, and (5) damage to the party whose relationship or expectancy was disrupted.

*Koster v. P & P Enterprises, Inc.*, 248 Neb. 759, 764, 539 N.W.2d 274, 278 (1995) (quoting *Wiekhorst Bros. Excav. & Equip. v. Ludewig*, 247 Neb. 547, 555, 529 N.W.2d 33, 39 (1995)).

The evidence at this stage shows that Lakner knew of Yant's customer relationships and acted to interfere with these relationships. In particular, Lakner diverted client business from Yant by failing to fill or complete customer orders while still employed by Yant. Lakner failed to respond to Parkview's inquiry for an updated bid, scheduled Gretna Gas and Lube for an equipment upgrade for after his departure date and told no one at Yant about the appointment, and contacted Weston BP to try to undercut Yant's price quote that he and Baker had previously given, all of which resulted in lost business and other opportunities to Yant. Filing 19-1 at 6-7. Yant is

therefore likely to succeed on this claim as well. This factor weighs strongly in favor of issuance of the requested preliminary injunction.

## B. Threat of Irreparable Harm

Under the next *Dataphase* factor, the movant must "demonstrate that irreparable [harm] is *likely* in the absence of an injunction." *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 192 S. Ct. 365, 172 L. Ed. 2d 249 (2008). "[I]rreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1040 (8th Cir. 2016) (quoting *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009)). The Eighth Circuit has agreed that while monetary damages alone can compensate for harm already incurred, injunctive relief is appropriate to "protect . . . against the loss of any additional customers due to the illegalities of the defendants." *Overholt Crop Ins. Serv. Co. v. Travis*, 941 F.2d 1361, 1371 (8th Cir. 1991). "Loss of intangible assets such as reputation and goodwill can constitute irreparable injury." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002) (citing *Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987)).

Here, Yant has presented concrete evidence that it has suffered and is likely to continue to suffer harm in the absence of an injunction. Yant contends that Lakner's use of its trade secrets to lure away its clients has and will continue to result in a loss of business and customer goodwill. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (internal quotation marks omitted) ("Harm to reputation and goodwill is difficult, if not impossible, to quantify in terms of dollars."). Yant has also demonstrated that Lakner has contacted at least five of its customers since his resignation—utilizing confidential contact information gleaned from

account documents and other materials compiled while he was in the employ of Yant—in an attempt to do business with them. The evidence shows Lakner has continued these attempts to poach Yant customers using customer information from Yant even after the commencement of this lawsuit. Thus, while Yant may seek economic damages, the amount of damages resulting from the loss of confidential customer information as well as the threat of ongoing harm makes damages difficult to ascertain with any degree of certainty. The Court concludes that in the absence of a preliminary injunction, Lakner is likely to continue his actions, resulting in further and ongoing loss of business to Yant. Accordingly, this factor weighs in favor in issuance of the requested preliminary injunction.

### C. Balance of Injury to the Parties

When issuing a preliminary injunction courts must assess whether the "balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Dataphase*, 640 F.2d at 113. To determine the harms that must be weighed, the Eighth Circuit has looked at the threat to each of the parties' rights that would result from granting or denying the injunction. *Baker Elec.*, 28 F.3d at 1473. A Court also must consider the potential economic harm to each of the parties and to interested third parties. *Id.*

As discussed above, the threat of harm to Yant in the absence of a preliminary injunction is significant. It has lost business and stands to lose significantly more if Lakner's actions continue. Lakner argues that the effect on him would be even harsher, claiming that a preliminary injunction would essentially "prohibit[ him] from working in the industry altogether" due to the relatively small number of available customers. Filing 18 at 11. However, by Lakner's own testimony while looking at the NPCA Directory, more than half of all the listed members are potential customers with whom Lakner had no contact during his work at Yant. Filing 33-15 at 8. Thus, the Court is

unconvinced that a noncompete restriction would unduly impede Lakner's ability to work for MPE.

Additionally, Lakner has shown a willingness to obscure his actions in order to solicit Yant clients which, in the Court's view, heightens the risk of potential harm to Yant if Lakner is not prevented altogether from so acting. As outlined above, Yant took confidential information, trade secrets, and solicited Yant clients using information he compiled while at Yant. Further, Lakner claimed in his affidavit submitted in opposition to Plaintiff's motion for temporary restraining order that he had not taken a customer list from Yant, despite the fact that he had compiled and kept a handwritten customer list with e-mail addresses. Following Lakner's deposition, he produced the handwritten list of email contacts mirroring those in the email he sent to Yant clients. Lakner has shown he is likely to continue to engage in nefarious and improper means, including lying under oath, to poach Yant customers, thereby resulting in serious harm to Yant.

Accordingly, the Court determines Yant's request for a short noncompete period should be granted in order to maintain the status quo. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam) (citing *Dataphase*, 640 F.2d at 113 & n.5) ("A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits."). The evidence shows it is likely that Lakner could have eventually, if much more slowly, obtained some of the client contact information he took from Yant. Thus, a short noncompete period of thirty days will provide Yant a similar timeline as if Lakner had not acted improperly. The balance of injury to the parties weighs in favor of issuance of the requested relief.

**D.  Public Interest**

Lastly, the Court concludes that the public interest favors issuance of a preliminary injunction.

Courts have held that the public interest favors a fair, competitive marketplace. *See e.g.*, *Minn. Mining & Mfg. Co. v. Rauh Rubber, Inc.*, 943 F. Supp. 1117, 1134 (D. Minn. 1996), *aff'd sub nom. Minn. Min. & Mfg. Co. v. Rauh Rubber, Inc.*, 130 F.3d 1305 (8th Cir. 1997). Lakner has gained and could continue to gain an unfair advantage using the information and resources belonging to Yant. As discussed in more detail previously, Lakner's use of trade secrets and his breach of loyalty to Yant allowed him to immediately engage in unfair competition with Yant in a way that he would not have been able to do had he played by the rules.

Furthermore, as stated above, the Court concludes a noncompete period is warranted to prevent Lakner from continuing to benefit from his improper use of the information described above. Such a restriction is tailored to serve the public interest in a fair and competitive marketplace and in not allowing Lakner to attempt to lie his way out of the consequences of his actions. This factor therefore weighs in favor of issuance of the preliminary injunction.

### III. CONCLUSION

The Court concludes Yant's Motion for Preliminary Injunction, Filing 2, should be granted.

IT IS ORDERED:

1. Plaintiff's Motion for Preliminary Injunction (Filing 2) is granted in part as follows:

2.  Through April 2, 2020, David Lakner is enjoined from calling on, soliciting the business of, selling to, servicing, or responding to any inquiries directed to him from those customers of Yant with whom Lakner had contact during his employment with Yant and who are not presently doing business with Midwest Petroleum Equipment (MPE);

3. Through April 2, 2020, David Lakner is enjoined from calling on, soliciting the business of, selling to, servicing, or responding to any inquiries directed to him from those customers of Yant with whom Lakner had contact during his employment with Yant and who have agreed to hire MPE as of the date of this Order but who have not yet had MPE perform any services for them;

4. Defendant is enjoined from using in any manner any confidential information or trade secrets, including compilations of customer contact information not publicly available, which he obtained from Plaintiff;

5. Defendant is enjoined from accessing or utilizing any database or email system or any information contained therein that is licensed to, owned by, or maintained by Plaintiff;

6. Defendant is ordered not to allow the destruction, manipulation, or disposition of any information, electronic or physical, alleged to belong to Plaintiff and in Defendant's possession. This includes the external hard drive Plaintiff claims Defendant removed from his office; any information stored on Defendant's personal cloud backup which relates in any way to Plaintiff's clients or business; and any physical or electronic lists, purchase orders, or other business documents of Plaintiff's;

7. Plaintiff was previously ordered to post a $500.00 bond in the Court's Temporary Restraining Order. The Court will therefore continue the $500.00 bond in this case and Plaintiff need not post additional security;

8. With the exception of Paragraphs 2 and 3 above restricting Mr. Lakner's contact with Yant customers which shall be in effect through April 2, 2020, the remainder

of the Preliminary Injunction shall continue in force until September 3, 2020, unless modified by further order of the Court.

DATED this 3rd day of March, 2020.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge